UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------X

SECURITIES AND EXCHANGE COMMISSION,

        Plaintiff,                        08 Civ. 3324

  -against-                                 OPINION

PENTAGON CAPITAL MANAGEMENT PLC
and LEWIS CHESTER,

        Defendants,

  -and-

PENTAGON SPECIAL PURPOSE FUND, LTD.,

        Relief Defendant.

------------------------------------X

A P P E A R A N C E S:

        Attorneys for Plaintiff

        SECURITIES AND EXCHANGE COMMISSION
        New York Regional Office
        3 World Financial Center
        New York, NY  10279
        By:  Paul G. Gizzi, Esq.

        SEWARD & KISSELL LLP
        One Battery Park Plaza
        New York, NY  10004
        By:  Christopher Dunnigan, Esq.
            John C. Lehmann, Jr., Esq.
            Mark Salzberg, Esq.

        Attorneys for Defendants

        PEPPER HAMILTON LLP
        600 14th Street, N.W., Suite 500
        Washington, DC  20005
        By:  Matthew D. Foster, Esq.
            Frank Razzano, Esq.

[stamp: USDC SDNY / DOCUMENT / ELECTRONICALLY FILED / DOC #: ___ / DATE FILED: 7/1/10]

**Sweet, D.J.**

Defendants Pentagon Capital Management PLC ("PCM") and Lewis Chester ("Chester") (collectively, the "Defendants") and Pentagon Special Purpose Fund, Ltd. ("PSPF" or the "Relief Defendant") have moved *in limine* pursuant to Rules 801(d)(2), 803(8) and 201, Fed. R. Evid., to determine the admissibility of congressional testimony of Steven Cutler pursuant to Fed. R. Evid. 801(d)(2), 803(8) and 201.

For the reasons set forth below, the motion as to admissibility is granted with leave granted to the plaintiff Securities and Exchange Commission ("SEC") to renew its relevance objections prior to trial.

**Prior Proceedings**

The SEC commenced this action on April 3, 2008 and filed its amended complaint against Defendants on September 9, 2008, alleging that Defendants late traded with two broker-dealers, market timed with several broker-dealers, and were the "architects" of a scheme to

1

deceptively late trade and market time, in which they enlisted certain retail introducing brokers.

Discovery is ongoing and, by opinion of March 17, 2010, certain SEC orders were determined to be admissible.

**The Cutler Testimony**

On November 3, 2003, Stephen M. Cutler ("Cutler"), then Director of the SEC's Division of Enforcement, testified about the SEC's agenda before the Senate Subcommittee on Financial Management, the Budget, and International Security (the "Cutler testimony"). He informed the subcommittee and the nation of the SEC's intention to identify illegal mutual fund practices and prosecute the alleged offenders. Cutler Testimony at 1-2. The testimony described certain aspects of the SEC's investigation and its plans for addressing allegedly illegal behaviors related to mutual funds, including a written examination of the policies and practices of 88 of the largest mutual fund complexes and 34 broker-dealers in the United States. Id. at 11-12. The testimony stated that more than 25% of responding broker-dealers had allowed customers to engage in late day trading and more than 50%

of the mutual fund groups surveyed had "one or more arrangements with certain shareholders that allow[ed] these shareholders to engage in market timing." Id. at 13, 16. This testimony indicated widespread use of market timing and late day trading, and provided the context of the market in which the actions of the Defendants occurred.

**The Testimony Is Admissible under Rule 803(8)(C)**

Under Rule 803(8)(C), a public report is presumptively admissible in a civil action if (1) it is "based upon an investigation made pursuant to legal authority" and (2) contains "factual findings." Bridgeway Corp. v. Citibank, 201 F.3d 134, 143 (2d Cir. 2000); Fed. R. Evid. 803(8)(C) (stating exception to the hearsay rule for "[r]ecords, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth . . . factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness"). The legal authority giving rise to the investigation need only permit the investigation, not require it. In re MetLife Demutualization Litig., 262 F.R.D. 217, 238 (E.D.N.Y.

3

2009); see also Fraley v. Rockwell Int'l Corp., 470 F. Supp. 1264, 1266 (S.D. Ohio 1979) (rejecting contention that Rule 803(8)(C) covers only investigations required by law, rather than merely permitted by it).

The testimony of Cutler was conducted pursuant to the SEC's Congressionally-granted authority, and the factual findings discussed were derived from the investigation conducted by the SEC. Cutler discussed the results of an investigation into allegedly illegal mutual fund practices and improper late day trading, practices that are within the power of the SEC to investigate and regulate. The investigation described in the testimony was commissioned by the SEC's Division of Enforcement pursuant to its Congressionally-granted power to obtain information from parties dealing with the purchase and sale of securities in the United States. When Cutler spoke to Congress, he explicitly stated that the SEC used its legal authority to collect the data that he would be sharing with Congress: "The second area of authority that [the SEC is] utilizing aggressively is the Commission's examination authority, which entitles [the SEC] to obtain promptly information and records from regulated entities." Cutler Testimony at 11. In light of the statute granting the SEC

4

power to investigate and the SEC's statement that it had the legal authority to conduct the investigation, element one of the two part test for admissibility under 803(8)(C) has been met.

The second criteria for admitting evidence under 803(8)(C) — whether the evidence contains "factual findings" — is met because the testimony provides data, facts, and conclusions that are reliable and based upon a legal investigation. "Opinions, conclusions, and evaluations, as well as facts, fall with the Rule 803(8)(C) exception, and enjoy a presumption of admissibility." United States v. Midwest Fireworks Mfg. Co., 248 F.3d 563, 566 (6th Cir. 2001) (quotations omitted); see also Beech Aircraft Corp. v. Rainey, 488 U.S. 153, 170 (1988) (holding that conclusions and opinions can be admissible under Rule 803(8)(C) if they are "based on a factual investigation and satisfy[y] the Rule's trustworthiness requirement"). "An authorized report of a government agency is assumed to be trustworthy absent evidence to the contrary." Gentile v. County of Suffolk, 129 F.R.D. 435, 449 (E.D.N.Y. 1990), aff'd, 926 F.2d 142, 155 (2d Cir. 1991). The information contained in Cutler's testimony consists of data collected in the SEC's investigation, conclusions drawn from the

5

data, and historical facts regarding actions taken based on the data.

Courts have regularly relied on Rule 803(8)(C) to admit agencies' public records and reports. See, e.g., Paolitto v. John Brown E. & C., Inc., 151 F.3d 60, 64 (2d Cir. 1998) (holding that "[f]indings of the EEOC or equivalent state agencies" fall within the ambit of the public records exception to hearsay); Beech Aircraft, 488 U.S. at 170 (admitting Navy report investigating and giving opinion on cause of air crash); Meriwether v. Coughlin, 879 F.2d 1037, 1039 (2d Cir. 1989) (admitting report of Temporary Commission of Investigation of the State of New York concluding there was widespread and institutionalized corruption among correctional staff); Bradford Trust Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 805 F.2d 49, 54-55 (2d Cir. 1986) (admitting FBI reports prepared in a related criminal matter); Litton Systems, Inc. v. AT&T Co., 700 F.2d 785, 818 (2d Cir. 1983) (admitting Federal Communications Commission decisions describing AT&T tariffs as "unnecessarily restrictive," unjust and discriminatory).

Cutler's testimony on behalf of the SEC (as memorialized in Exhibit A) is admissible under Fed. R.

Evid. 803(8)(C) because the testimony contains factual findings and conclusions based on an investigation conducted by reliable entities.

The cases relied upon by the SEC in opposition to the motion are distinguishable. <u>Smith v. Isuzu Motors Ltd.</u>, 137 F.3d 859 (5th Cir. 1998), dealt with an interim report that was not accepted by the administrator of the agency. <u>Id.</u> at 862-63. In this case, the Commission accepted the results of the investigation, relied upon those results when Cutler addressed Congress under oath, and made his sworn testimony publicly available.

The testimony is a public report, based upon an investigation made pursuant to legal authority containing factual findings.

**Relevance Remains at Issue**

The Cutler testimony appears to be relevant at this stage of the action, with discovery still incomplete, although the issue must remain unresolved prior to the submission of the pretrial order. The SEC is granted leave

7

to renew its relevance objection after the issues and evidence have been clarified.

**Conclusion**

Defendants' motion in limine is granted as to the admissibility of the Cutler testimony, subject to a further ruling on relevance at an appropriate time in the proceedings.

New York, NY
June 30, 2010

ROBERT W. SWEET
U.S.D.J.